820 P.2d 313

**Mary Ann ORTIZ,**
**Plaintiff/Appellee/Cross–Appellant,**

v.

**Jack J. RAPPEPORT,**
**Defendant/Appellant/Cross–Appellee.**

**No. 2 CA–CV 90–0139.**

Court of Appeals of Arizona,
Division 2, Department B.

March 12, 1991.

As Corrected March 26, 1991.

Review Dismissed Nov. 19, 1991.*

Jack L. Lansdale, Jr. and Gary S. Kneip, Tucson, for plaintiff/appellee/cross-appellant.

Donald E. Gabriel, Tucson, for defendant/appellant/cross-appellee.

## OPINION

HOWARD, Judge.

This is an appeal from an order of support in a special paternity proceeding. The father admitted paternity during the litigation and his main contention on appeal is that the trial court erred in the amount of support awarded. He also contends the

* Gordon, C.J., and Cameron, J., of the Supreme Court, recused themselves and did not participate in the determination of this matter.

trial court erred in admitting irrelevant and immaterial evidence and in allowing discovery to continue during the trial.

The mother has cross-appealed, contending that the trial court erred in the amount of back child support which it awarded her. We affirm the trial court in all respects.

The father is an attorney and a retired law school professor. The mother graduated from high school in 1968 and is currently employed as a deputy clerk at the Pima County Superior Court. The mother became pregnant in February or March 1985 and the child was born on December 18, 1985. When the mother became pregnant and informed the father of her condition, he had her quit her job and move into an apartment that he owned next to his mother's, so that appellee could take care of his mother. Appellee lived there about two years with a child by a previous marriage and the child who is the subject of the paternity action. In 1987 appellee moved out of the apartment and went with the children to live with her parents where she was residing at the time of trial.

In 1989, after the father admitted paternity, appellee applied for and received social security benefits for the child.

### THE APPEAL

#### I.

The record shows that throughout the course of the litigation the father did everything he could to hamper the discovery of the nature and extent of his assets. The father claimed that an account known as the "Jack Rappeport Trust" was a confidential attorney/client account. However, the evidence at trial showed that he deposited his retirement and social security checks in this account. Although he claimed that his monthly income consisted of his retirement and social security checks in an amount of a little over $3,200, in 1987 he deposited over $121,000 in his trust account, including over $34,000 cash. In 1988 he deposited over $191,000 in this account, including $91,000 in cash. In July 1987, approximately three months prior to the filing of this action, he quitclaimed

several pieces of property to his daughter, but did not record the quitclaim deeds until July 1989. Despite the purported transfer of the property, he depreciated one of them on his 1988 tax return and paid the 1988 property taxes on this property.

After hearing the evidence, the trial court entered the following order:

Pursuant to A.R.S. 12–849 the Court ORDERS as follows:

1. As to the lying-in expenses of the mother, the Court finds there are no out-of-pocket expenses for which the mother has not been reimbursed.

2. As to past care and support of the child, the Court, after considering actual expenses by the mother and contributions by the father, ORDERS the father to pay the sum of $8,400 to the mother.

3. As to reasonable and necessary current support for the child, the Court takes into account the factors listed in A.R.S. 12–849(C). The Court also finds that the Arizona Supreme Court intended the Child Support Guidelines (first adopted July, 1987) to apply to paternity cases. The Court finds that the father has total retirement/pension/social security income of $3,242.66. He also has a court ordered spousal maintenance obligation of $1,200. The Court also finds that the father has considerable assets, which, despite appearing to be titled or held by others, are actually under the father's control and are his. The Court finds that these assets produce income at the will of the father, and that the amount of income for that reason defies easy quantification.

The Court finds the mother has income of $1,118.77 per month.

The Court takes into account the other children of both father and mother, as well as the statutory considerations.

The Court finds the total child support obligation to be $660, and the father's share to be $500 per month. The Court, therefore, ORDERS that the father pay $500 per month, effective March 1, 1990 for child support.

In arriving at the amount of child support set forth in the order, the court

followed the child support guidelines adopted by the Arizona Supreme Court which became effective October 1, 1987.[1] The guidelines apply to all children whether they are born in or out of wedlock, and one of the premises is:

The child support award should permit the children a standard of living which as closely as possible approximates the one they would have had if the family remained together, recognizing the cost of maintaining two households.

The guidelines create a rebuttable presumption as to the amount of child support:

In any action to establish or modify child support, whether temporary or permanent, the child support guidelines should be used in the establishment or modification of the amount of child support. Courts may deviate from the guidelines where their application would be inequitable. In such cases, the court should specify the reasons why the guidelines were not applied.

The father relies heavily on our case of *Edgar v. Johnson,* 152 Ariz. 236, 731 P.2d 131 (1986), where we stated that once it is established that the non-custodial parent has sufficient income to provide for the needs of the child, the amount to be awarded is to be determined by the needs of the child and not the non-custodial parent's income. From this statement, he argues that the child's present needs are the only consideration. We do not agree. The 1987 child support guidelines supersede any statements made in *Edgar.* Under the guidelines the adjusted gross income of the non-custodial parent is used to determine the total child support obligation. It is clear that the use of the adjusted gross income of both the custodial and non-custodial parent has built into it a standard of living as set forth in the premises contained in the guidelines.

In *Edgar,* we were faced with the situation where the child support ordered by the court exceeded the amounts that the mother claimed were her expenses for the child.

We held that it was error to award her sums in excess of the child's needs. However, we did observe that if satisfying the needs of the child results in some ancillary benefit to the custodial parent, so be it.

The father contends that the evidence showed that the child's present needs were only $270 per month. His figures are derived from the mother's expenses at the time of trial when she was living with her parents. However, the mother and child are not required to spend the rest of their lives living with her parents in order to keep the father's support payments at a minimum. We hold that the evidence of the child's present needs while living with her grandparents did not rebut the guidelines' presumption.

## II.

█ The father next contends that the trial court failed to make the findings required by the guidelines and failed to justify its deviation from the guidelines. We do not agree. Paragraph 18 of the guidelines states:

The court shall make findings in the record as to: gross income, adjusted gross income, basic child support obligation, total child support obligation, each parent's proportionate share of the total child support obligation, and the child support award.

By examining the schedule contained in the guidelines it is clear the trial court found the adjusted gross income of the parties was at least $5,500 per month which means that the adjusted gross income of the father was at least $4,381.23. The trial court also found that the father could produce income at will. This conclusion is supported by the record. The father cannot defeat his obligation by hiding income and assets. The record supports the amount found by the trial court and justified the trial court's finding that the father's gross income excluded the amounts of his retirement and social security checks.

December 31, 1989.

---

1. New guidelines were adopted by the Arizona Supreme Court to govern actions filed after

The father contends the trial court erred in allowing discovery during the course of the trial. Instead of making an argument on this issue in the briefs, the father refers us to a Memorandum of Points and Authorities contained in a prior special action filed in this case. This procedure does not comply with Rule 13(a)(6), Ariz.R.Civ.App.P., 17B A.R.S., and we shall not, therefore, address this issue. In view of our disposition, we need not answer any of the other issues raised by the father.

### III.

The father contends there is no credible evidence to support the trial court's award of $8,400 for back child support because appellee's mother testified she did not charge appellee for the child to stay at her house. We do not agree. Appellee's mother testified that she did not charge, but this did not mean that appellee did not pay anything, and from the evidence from both appellee and her mother there was sufficient evidence to support the trial court's conclusion.

### THE CROSS–APPEAL

For approximately 34 months the mother received no child support from the father. The mother contends that, because the trial court found the father's support obligation under the guidelines was $500 per month, the amount of $8,400 for back child support was inadequate. We do not agree. Back child support awarded pursuant to A.R.S. § 12–849(A) is for money and services actually expended for the care and support of the child, whereas the support awarded under the guidelines is based on the child's needs. The trial court did not err in the amount it awarded for back child support.

Appellee has asked for and is entitled to her attorney's fees in defending this appeal pursuant to A.R.S. § 12–849(E) which will be awarded upon her compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

It is ordered that both parties bear their own attorney's fees in relation to the cross-appeal filed in this case.

Affirmed.

HATHAWAY and LACAGNINA, JJ., concur.